Our final case for this morning is United States v. Charles Schrode, Schrode, sure. Mr. Hillis. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Service, and I'm here to discuss three issues, as your honors are aware. The first of them is the most significant, in my view, because it has the most impact on the amount of time that my client will do in prison. In our view, the district court misapplied the guidelines in this case, the specific guideline, Section 5G 1.3, when it decided that the receipt and the possession counts weren't relevant conduct. At sentencing, the government argued all counts were relevant conduct for the state conviction. And in our view, the government is right. Of course, the government's taken a different view on the appeal, but as we've argued in our brief, the government's position is untenable, because relevant conduct requires some overlap between offenses, and we have that here. And you can demonstrate overlap between offenses in any of three ways. It exists if there's a past, if there's a similarity in victims, excuse me, the same victim in the past and present offenses, if the offenses stem from the same underlying conduct, or the offenses are similar offenses. In the state case involving the predatory sexual assault, which my client is doing an 18-year sentence, we have the same victim that we do in the two federal production offenses. That demonstrates relevant conduct. If we were to go with, I think, lesser arguments in terms of the relative strength, we could also say that the offenses stem from the same underlying conduct, and that the underlying conduct in both the state and the federal cases was the sexual assault. The sexual victimization of the victim, the Jane Doe, here. Well, she does run it concurrently for counts two and three, which is the same victim as the state. She does, but she does that by, in our view, a faulty application of 5G1.3, because she separates fences and applies Subprovision B, 5G1.3B, to two, and 5G1.3D to the other two. If you read 5G1.3, sections A, B, C, and D are listed in the alternative. They are mutually exclusive. You cannot have, and I think the government makes this argument to try to save the sentence here, that the judge was essentially trying to apply 5G1.3D, but the judge didn't say that. The judge said, as Your Honor notes, that she was applying 5G1.3B and D. They are mutually exclusive. You can't do that. That demonstrates error, and it would be reversible error in this case, because contrary to what the government argues, there's no harmlessness that's evident on the record here, because the district court never says, and irrespective of my guideline calculation, I would impose the same sentence in any event. No, it could have been imposed, I take it. The judge could have. Right, just to be clear, that there wasn't any kind of cap that would have prevented that. No. She just doesn't say it. She doesn't, but that's what would be necessary, and to the government's credit, they caught an error that I missed, and so far as the total sentence was 633 months, it should have been 630 months, and that demonstrates an error as well, and I'm grateful to Mr. Walters. 627, yeah. Yes, for pointing that out. But those, the three sub-provisions, excuse me, the four sub-provisions are mutually exclusive. The conduct is relevant conduct, because it is all harm. It is all conduct that is part and parcel. My question is, once we agree that it's concurrent for two and three, which is the same victim, the same problems, then you're automatically under B. Yes, and I think that the logic is consistent with the court's analysis in the Sanchez case, which came out after I filed my opening brief, the government filed its response, I said it in the reply. I think that the district court got off track when it relied on NANYA, and there was a change in the guidelines and what needed to be shown, and this court's recent analysis in the Sanchez case shows that the two-part analysis in NANYA is inapplicable. Instead, we look to Sanchez, and I think that we've demonstrated that if there's relevant conduct for two of the four federal counts of conviction, if it's the same victim and so forth in the state court case, then we are under 5G1.3B2, and the sentence should have been fully concurrent. So why wouldn't you look to D instead if B doesn't apply to everything? Why do you take B? B, I think, is our strongest grounds to say fully concurrent under B2. I know you would prefer B, but I'm saying why not D, where it's kind of a mixed situation, just say it's all under D? I don't think it's the complex case that it's made out to be here. I think it's fairly straightforward. If you look at who the victim is, both in the state case and the federal case, you find that you are in B, not D. But in any event, the judge can't apply both, so we have an error in any event. But whether it's harmless or not might matter if it's B or D. But to correctly apply D, the judge should have gone through the analysis and considered the five factors that are relevant for application of D, and the court didn't do that here. It at least shows some confusion by the judge about what the appropriate sentence would be relative to the guideline calculations. I would turn, unless the court has further questions on that matter, to the second error that we've raised, and that is the length of supervised release. And the judge relied strongly on the heinousness of the offense. And that is one factor, the seriousness of the offense. But it's a factor that's not even supposed to be considered for the purposes of imposing the period of supervised release. Well, it's not a listed factor. We've said you can think about it. Yes, which, as defense attorneys, we take issue with. It's to us procedural error that the statute says it's to be omitted, and this court has allowed it so long as it's not been principally relied upon. And in this case, it was, Your Honor. So even if you were to accept that while the statute doesn't allow for its consideration, if the district court doesn't primarily base its sentencing decision on the inappropriate factor, that the sentence could still be affirmed, here we have a different situation where the judge is principally driven by the heinousness of the offense. But can I ask a practical question? I mean, this guy has a long prison term, and whether or not she had thought about the heinousness of the offense, I mean, how long is he going to serve on supervised release unless the sentence were to be drastically shortened? But if it weren't, I mean, is this really a serious point? It is, and there's an obvious reason why. It's a hook for us to get back for resentencing. So if I'm flat out wrong in 5G 1.3b, this is still a grounds for us to get back in, and the government's contended that we have a waiver issue in the case. That would allow us to get back in and argue the 5G issue before the judge again. We've got Pepper. Any post-incarceration rehabilitation my client's been engaged in would mitigate in favor of a lower sentence. So it is an important point, and that's why we continue to raise these issues. Furthermore, it's something that we wish district courts would be more careful about when they decide to impose the length of supervised release. So if he's going to be elderly when he comes out and he doesn't need lifetime supervised release, we could have a lower period and extend it only as necessary later under modification proceeding under 3583E. But how is the judge supposed to predict that 50 years out or whatever it is? I mean, it's a long time. Sure. She doesn't need to. Go with what is the minimum and increase it only as necessary, as opposed to the reaction always being go for the maximum length of supervised release in the greatest number of conditions and work your way backwards from that. Start small. Only go up as is necessary. I think that's consistent with the parsimony principle under 18 U.S.C. 3553A anyway. Impose a sentence that is not greater than necessary. Start small. Fewer conditions. Shorter length of supervised release. Further, for the third point, and I'll be brief on this, we think that the district court, not purposefully, but certainly did not comply with the Constitution by way of the non-delegation argument that we've made. Article III prevents district courts from granting powers to probation officers to impose sentence. These are all significant things when you allow the probation officer to determine if you have to be in sex offender treatment, if you have to be in substance abuse treatment, if you have to be in mental health treatment. That's not something that can be left to the probation officer to decide. The district court wants to impose those things, impose them, and leave only the ministerial aspects of the programs to the probation office. That's not what happened here. And lastly, I am troubled about the follow instructions condition because we have seen a recent example, and I've cited it, where the super condition allows probation officers, they think, to do any number of things requiring our clients to be involved in substantive programs. We think that's a problem. I've identified that in the brief. Unless the court has questions, I'll save the balance for now. Thank you. Thank you. Mr. Walters? Good morning, Your Honors, and may it please the Court. If I could just briefly address a point that counsel made at the end. If counsel is troubled, defense counsel, with the supervised release condition, the way to go about it is not to say, Judge, we have no objection to your wording, and then to a sentencing to, again, reaffirm the no objection to the wording of a condition. And that happened with respect to each of the four conditions he challenges on appeal. So we're looking at waiver or forfeiture under your view? It is explicitly waiver because he addresses explicitly each condition in his sentencing commentary in Record 60, where he says, with respect to this particular condition recommended in the PSR, we do object to the PSR's wording, but not to the wording of the district court that was handed out on October 16th of 2015. So do you think the Hill case that he cited in his 28J letter, which deals with that follow the instruction of the probation officer, in that case saying that was too indefinite, what's your view of that? Still waiver? It's still waiver. It's not indefinite. When this court in Thompson, Kappus, a number of cases, has said follow the instructions of the probation officer without using a qualification of reasonable instructions, is a necessary condition incident to supervision. So even if it were not waiver, we're under plain air standard. And it is hard. I don't know how the court could say it's plain air when the court imposed a condition that this court has said is a necessary incident to supervision. And with respect to the Hill case, I understand it was just issued whatever, and I don't mean this in a derogatory sense, but there were really no parties on either side of the argument of that case. The government didn't brief. The defense didn't. Anders briefed. But at least under the plain air standard, it was not plainly erroneous for the court to have imposed that condition that this court has said is a necessary incident to supervision. So we have waiver. Well, there's a remand in Hill to see whether there was adequate consultation. Right, as far as waiver. So it may or may not wind up as waiver. And I mean no disrespect. It's just when the issue is waiver, and in between is maybe what some might argue is dicta concerning conditions, because the holding of Hill is we need to know whether the waiver occurred or not. That's the holding in Hill. That's our feeling. That's the only bottom line holding. So I just didn't mean to address that so long. I want to address the crux of this appeal. And maybe speak to that Sanchez case that he relies on. Well, what's interesting to speak to Sanchez, when we look at the application of Section 5G 1.3b, the condition precedent is whether the conduct underlying the state court conviction is relevant conduct to the federal conviction. And what the defendant didn't do, whether it's relying on Sanchez or other cases in which Sanchez wasn't an earth-shattering decision to say that relevant conduct is something that's related to the offense of conviction. What the defendant didn't do in this case, Your Honor, is base his argument on the definition of relevant conduct. He cites to it, but he then goes to a deconstructive approach of analyzing the guideline enhancements in this particular case or the specific offense characteristics, or looking at a Chapter 4 enhancement, instead of focusing on the definition of relevant conduct, to see whether the April 2013 sexual assault of A.L. or Jane was relevant conduct to the receipt and production counts, counts 1 and 4. And we think that when the guidelines give a definition of relevant conduct, and the defendant wants to argue that a district court erred in making a relevant conduct determination, that the analysis needs to start with that definition as opposed to a deconstructive approach of looking at not even the counts that he says it's relevant conduct for, but the ones that neither party is opposing and saying the court was correct in finding it was relevant conduct with respect to the two production counts. And those are the ones he focuses on instead of the receipt and possession counts. And then the Chapter 4 enhancement argument is problematic just because relevant conduct is defined as Chapter 2 offense calculations and Chapter 3 adjustments. It's unrelated to enhancements under Chapter 4. So to rely on that to argue that the district court erred in finding that it was not relevant conduct with respect to counts 1 and 4, I just think it misses the mark. Instead of looking at the definition of relevant conduct. And I think in Sanchez, that's what the court was doing. It focused on the definition of relevant conduct, or at least a shorthand version of that, to determine whether defendant Sanchez met his burden, since he was looking to use that affirmatively for his own benefit in establishing whether or not the sentences should be concurrent. And so as far as Sanchez applies, it actually reinforces it was the defendant's burden to show that the district court erred in making the determination that it wasn't relevant conduct with respect to counts 1 and 4. Mr. Walters, what about Condition 8 in the delegation issue in Condition 8? I understand what the district judge may have intended, but it didn't specifically direct it, did it? Condition 8 is a sex offender treatment condition that says, as deemed necessary by. To be frank with the court, absent a waiver argument, in which we don't waiver a waiver argument. No, I didn't mean to suggest you were. I want to be up front in our brief without confessing error that I would say as deemed necessary by the probation officer without guidance. Mr. Hillis has made a very probably strong argument absent that waiver. What I would like to point out as far as non-delegation, but even if it is a delegation problem, what still stands as precedent in this court is something that is either tension with Thompson and Kappus, is you still have a line of cases such as McKissick, that when we're under plenary review and we're looking at one condition, United States against McKissick, and that's where this court said under plenary review, it's hard to show plenary when that condition can be modified at any time, that there was a substantial denial of rights in imposing that condition. When we're looking at a 630-month aggregate sentence to remand this back to the district court for at most one supervised release condition, I think actually it detracts from the trust in the judicial system in this context. And I'm not arguing about the court in doing so in other cases, but on one condition, on a 630-month sentence for somebody who has committed the crimes that he has committed and the manner in which he has committed, I think that that detracts from the trust in the judicial system under plenary review when that can be modified at any time if it is improper delegation of judicial authority. So your suggestion is that it can be modified by defense counsel at a later date? The supervised release condition can be modified at any time is my reading of Section 3583. So that should be what you would want in an opinion, that it should be done at a later time? I mean, clearly the judge, it seems to me, had it in mind, but just didn't direct it, instead left it to the discretion. I certainly don't believe it was Judge Myerscough's intent to leave it to the probation officer's discretion for sex offender treatment when she says it is necessary, which brings another point. I respectfully disagree with my colleague when he argues that the standard of review should, or that there's no waiver because she didn't make the findings. I mean, if the court were to look, actually Judge Myerscough did an excellent job in imposing supervised release. There was notice. She provided her own guidance on what she intended to do. She addressed objections made by the defendant. He explicitly said no objection to certain conditions, and then the ones he maintained she addressed. And then when it came time to pronounce the sentence, she pronounced the conditions and then followed up almost each condition, aside from administrative ones, with findings. I find this is necessary because. She really did model what this court has suggested are the right practices, the best practices in imposing conditions of supervised release. So for the reasons in our brief and argument today, unless there are other questions from the court, we would ask that you affirm the district court's judgment in all respects. Don't we need to fix the 630 to 627, a limited remand? We wouldn't oppose a limited remand. We brought that to the court's attention. I don't know if it's. I won't fall on my sword on waiver on that, Your Honor. Okay. Thank you. Thank you. You have a little bit of time, Mr. Hillis. I think you have a minute. I'd like to begin with the government's assertion of waiver. On page 17 in our opening brief, we discussed what the definition of relevant conduct is. We may have taken a nontraditional approach to try to illustrate why this is relevant conduct with the Chapter 4 enhancement, but let's not forget what relevant conduct is. It includes all acts and omissions and all harm that results from, and that's specifically noted on page 17 of the opening brief before we go into the more specifics of what 4B1.5 pattern and abuse is and so forth. So there is no waiver. To follow up on the lack of a waiver issue, when trial counsel talked about supervised release, it's apparent in both his submission to the court and his commentary, and then I think again at the sentencing hearing, that he does not oppose supervised release a lifetime, so long as he gets a 20-year fully concurrent sentence, he wouldn't oppose the conditions in that regard either. But that's not what happened here. So it was a conditional argument about the conditions of supervised release and the length of supervision. And Judge Flom, this Court's jurisprudence has been clear, and Johnson, that's an opinion I know that Judge Williams, you were on that panel, to leave it to, and I believe authored the decision for the Court, to leave it to defendants to modify conditions later after they've been imposed is something this Court has rejected. And so consistent with Johnson, we shouldn't do that. Also, so far as a limited remand, the jurisprudence of this Court, on Kappus, on Thompson, has been for full resentencings, and that should be the case again here. We have a prospect of a pepper argument and other things, I think further issues that need to be sorted out here in this case. A full resentencing, I think, is the appropriate remedy. That's what we have asked for, and I think the errors that we've identified support it. I appreciate your argument. I appreciate the comment you made. I just would suggest in the 28J letter, your conclusion of what Hill opinion struck, it may not be as accurate as occurred. I mean, I respect your advocacy. You know that. But to say the Hill opinion struck a supervised release condition when the issue was a remand to see whether or not the dialogue was. . . I apologize for the inaccuracy. When I was drafting that and trying to get up here, Your Honor. . . No, no, I understand you did it under time pressure. But it is an opinion that was sent back to get a little clarification, and perhaps didn't strike anything. I think I phrased that incorrectly. I apologize to the Court. It took issue with the condition. . . I'm not offering an admonition. I'm not suggesting an admonition. I just wanted to. . . You're a pretty good technocrat and a very able counsel and a leader in this area on supervised release conditions. But I just wanted to suggest that you don't want to overstate Hill. I should at least be as careful to criticize as I am to write. So I take your point, Your Honor. Thank you. All right. Well, thank you very much, Mr. Hillis. Thank you, Mr. Walters. We will take the case under advisement, and the Court will be in recess.